CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 08 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DARREL A. WHITE, | ) | Civil Action No. 7:14-cv-00505 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DWAYNE A. TURNER, <u>et al.</u>, | ) | By:   Hon. Michael F. Urbanski |
|     Defendants. | ) |         United States District Judge |

Darrel A. White, a Virginia inmate proceeding <u>pro se</u>, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, naming numerous staff of the Red Onion State Prison ("ROSP") as defendants. Plaintiff alleges that the conditions of confinement he experienced at ROSP violate the Eighth and Fourteenth Amendments of the United States Constitution. Defendants filed a motion for summary judgment, and Plaintiff responded with a cross motion for summary judgment, making this matter ripe for disposition. After reviewing the record, I deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

I.
A.

Plaintiff demands damages and equitable and injunctive relief for the following claims.[1]

- Claim 1

    Plaintiff's mail was delivered to the wrong cell where an inmate wrote offensive comments on it before it was delivered to Plaintiff.

- Claim 2

    Defendant Jarvis refused to enforce a Virginia Department of Corrections ("VDOC") Operating Policy ("OP") by upholding a Level I grievance determination, which allegedly allowed defendants Artrip and Turner to "abuse governmental authority" and to retaliate by keeping Plaintiff in segregation.

---

[1] Plaintiff did not enumerate the claims in the complaint, but he did adopt the claim numbers and descriptions used for Defendants' motion for summary judgment. Consequently, the court adopts the parties' claim numbers and descriptions.

- Claim 3

    Defendants Artrip and Turner answered Plaintiff's informal complaint about themselves, which proves their "conspiratorial abuses" of Plaintiff.

- Claim 4

    Defendants Turner, Artrip, and Lt. Day placed Plaintiff in segregation without notice or a formal ICA hearing.

- Claim 5

    Defendants Turner and Lt. Day had Plaintiff moved to an isolation cell that had feces on the inside of the cell door between August 7 and 21, 2014. Defendant Artrip knew about the feces but did not do anything to remove it.

- Claim 6

    On December 10, 2014, defendants Counselor Stewart and Lt. Day conducted another ICA hearing that kept Plaintiff in segregation, in violation of an OP.

- Claim 7

    On November 12, 2014, defendant Lt. Stanly's subordinate conducted an ICA hearing that recommended keeping Plaintiff in segregation.

- Claim 8

    Defendants Major Gilerheart, Lt. Stanly, Building Supervisor Miller, and Turner were deliberately indifferent to an alleged serious risk of harm facing Plaintiff as a result of an inmate hoarding feces in another cell. On August 21, 2014, Lt. Day and Turner had Plaintiff moved to the former cell of an inmate who has hepatitis, thereby putting Plaintiff at risk of contracting hepatitis.

### B.

Defendants explain the reasons for Plaintiff's continued, uninterrupted confinement in segregation in support of their motion for summary judgment. Before February 2013, Plaintiff was at ROSP, which uses a goal-oriented, incentive-based segregation housing plan. When inmates exhibit positive behaviors and succeed in completing established goals of the program, they are rewarded with more privileges via their security classification. ROSP's Security Level S inmates are assessed and assigned to the following security levels, listed from most to least

2

restrictive: Intensive Management ("IM") IM-0, IM-1, IM-2, and IM-SL6; Special Management ("SM") SM-0, SM-1, SM-2, and SM-SL6; Step Down-Level VI General Population; Structured Living-Phase 1 and Phase 2; and Security Level 5 General Population.

Plaintiff had been assigned to segregation at security level SM-2. The Institutional Classification Authority ("ICA") reviewed Plaintiff's classification in February 2013 and ultimately reduced him to Structured Living Phase 1. Plaintiff moved to a Structured Living Phase 1 cell on May 1, 2013.

Three weeks later in May 2013, Plaintiff was transferred to Sussex I State Prison ("Sussex") for medical treatment. Due to his Security Level S classification, Sussex housed Plaintiff in segregation, where he incurred six disciplinary infractions during his one-year stay.

Once Plaintiff returned to ROSP in May 2014, Plaintiff received a notice that the ICA would conduct his classification hearing. Plaintiff was present at the ICA hearing on May 29, 2014, which ultimately resulted in Plaintiff's continued assignment in segregation at Security Level S. Since returning to ROSP, Plaintiff has remained in segregation and incurred at least eight additional disciplinary infractions.

## II.

Plaintiff and Defendants argue that they are entitled to summary judgment. A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-

3

movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by a defendant's motion for summary judgment. See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment).

## III.

Defendants argue that claim 5 is barred because Plaintiff failed to exhaust administrative remedies available via Operating Procedure ("OP") 866.1, which is the administrative remedy program for VDOC inmates. OP 866.1 provides inmates the ability to resolve complaints, appeal administrative decisions, and challenge policies and procedures.[2] All issues are grievable except institutional convictions and matters beyond the VDOC's control.

Prior to submitting a grievance, the inmate must make a good-faith effort to informally resolve the issue by submitting an informal complaint form, which is available in housing units. However, an inmate is not required to file an informal complaint to report issues of sexual abuse.

---

[2] Inmates are oriented to the inmate grievance procedure when they enter the VDOC's custody and when they are transferred to other VDOC facilities.

4

If the issue is not informally resolved, the inmate must file a regular grievance within thirty calendar days from the date of the occurrence or incident.[3] Regular grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within two working days from the date of receipt with instructions, when possible, about how the inmate may remedy any deficiency.[4] An inmate may appeal an intake decision by sending the grievance and the intake decision to a regional ombudsman within five days of receipt. There is no further review of the intake decision.

For claim 5, Plaintiff alleges that defendants Turner and Day placed him in a cell with feces on the door on August 7, 2014. However, there is no record that Plaintiff filed a regular grievance about the feces on his door. Plaintiff's conclusion, without support, that the grievance records are fraudulent fails to sufficiently establish that "any defects in exhaustion were . . . procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); Jernigan v. Stuchell, 304 F.3d 1030, 1032-33 (10th Cir. 2002). Accordingly, Defendants are entitled to summary judgment for claim 5 due to Plaintiff's failure to exhaust available administrative remedies.

## IV.

Defendants are entitled to summary judgment for all of Plaintiff's exhausted claims. Plaintiff complains that his mail was delivered to the wrong inmate, who wrote offensive comments on the mail that Plaintiff later received. Plaintiff does not allege a defendant's personal involvement with this claim, and Plaintiff does not describe the deprivation of a right

---

[3] Regular grievances may receive three levels of review. A facility's warden or superintendent conducts the first, "Level I" review. If the inmate is unsatisfied with the Level I determination, the inmate may appeal the determination within five days of receipt to Level II, which is usually done by a regional ombudsman. For most issues, Level II is the final level of review. For the few issues appealable to Level III, the inmate may appeal the Level II determination within five days of receipt to the Deputy Director or Director of the VDOC.

[4] A copy of the intake decision is kept in the inmate's grievance file.

5

protected by federal law. See, e.g., Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Fisher v. Washington Metro. Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). Similarly, Plaintiff complains about Defendants' responses to his grievances, but state inmates do not have a constitutionally protected right to access grievance procedures. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "[R]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation" and that "there is no liability under § 1983 for a prison administrator's response to a grievance or appeal[.]" Brown v. Va. Dep't of Corr., No. 6:07-cv-00033, 2009 U.S. Dist. LEXIS 3022, at *48-49, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (Moon, J.). Plaintiff cannot hold Defendants liable as supervisors under respondeat superior, and he fails to establish any defendant's deliberate indifference. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff's allegations that defendants violated various operating procedures or policies do not implicate federal due process and are not cognizable claims. Riccio v. Cnty. of Fairfax, VA, 907 F.2d 1459, 1469 (4th Cir. 1990).

Plaintiff also alleges that he was briefly placed in a cell with feces on the door. Even if true, this condition is not so atypical as to constitute a "significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); cf. Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Furthermore, Plaintiff has not presented any evidence of any serious medical or emotional deterioration caused

6

by the alleged exposure to another inmate's illness or feces. See, e.g., Strickler v. Waters, 989 F.2d 1375, 1380 (4th Cir. 1993).

Plaintiff's classification hearings or results did not violate due process. The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty or property. To prove a violation of due process, the inmate must be able to show that the government deprived him of a liberty interest. See, e.g., Sandin, 515 U.S. at 478-79. To demonstrate a liberty interest, an inmate must show (1) the denial of an interest that can arise either from the Constitution itself or from state laws or policies, and that (2) the denial imposed on him an atypical and significant hardship. Prieto v. Clarke, 780 F. 3d 245, 251 (4th Cir. 2015). Even if a state law or policy requires both substantive criteria and a procedural process to make classification decisions, the law or policy does not create a constitutionally protected liberty interest if a reviewing authority has the discretion to override a classification decision proposed under the law or policy. Slezak v. Evatt, 21 F.3d 590, 595 (4th Cir. 1994).

The Director of the VDOC created a classification system, OP 830.1, pursuant to Virginia Code § 53.1-32.1. VDOC's OP 830.1 provides opportunities for review and rejection of the ICA's classification recommendations and does not mandate a particular classification decision. Consequently, neither Virginia Code § 53.1-32.1 nor OP 830.1 creates a constitutionally protected liberty interest for Plaintiff to be in a particular custody classification.

Since Plaintiff has no liberty interest in being housed at any particular prison or classification with less restrictive conditions, Plaintiff's incarceration at ROSP does not violate due process. See, e.g., Meachum v. Fano, 427 U.S. 215, 224-25 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in

7

any of its prisons."). Accordingly, Defendants are entitled to summary judgment, and Plaintiff's motion for summary judgment is denied.

V.

For the foregoing reasons, Defendants' motion for summary judgment as to all federal claims is granted. The court grants Plaintiff's motions to amend his motion for summary judgment, pursuant to Federal Rule of Civil Procedure 15 and <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). The court denies Plaintiff's motions for summary judgment, to dismiss defendants' motion for summary judgment, to strike, for sanctions, for physical and mental evaluations, and for "entry of protection on Plaintiff's person property" as meritless and unwarranted. The court dismisses any state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**ENTER**: This 8th day of December, 2015.

/s/ Michael F. Urbanski
United States District Judge